## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

Brevity Ventures Inc.,[1]

Debtor.

Chapter 11

Case No. 14-11468 (MFW)

**Proposed Objection Deadline: at time of hearing**
**Proposed Hearing Date: September 25, 2014 at**
**11:30 a.m. ET**

## MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION FOR ENTRY OF AN ORDER (A) APPROVING AND AUTHORIZING THE SALE OF SUBSTANTIALLY ALL THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES AND (B) GRANTING RELATED RELIEF

Brevity Ventures Inc. (the "Debtor" or "Brevity"), as debtor and debtor-in-possession in the above-captioned case, by and through its undersigned counsel, hereby files this motion (the "Motion") pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for Entry of an Order (a) Approving and Authorizing the Sale (the "Sale") of Substantially All the Debtor's Assets (the "Assets" or "Property") Free and Clear of Liens, Claims, Interests, and Encumbrances, and (b) Granting Related Relief. In support of this Motion, the Debtor respectfully represents the following:

---

[1] The Debtor in this Chapter 11 Case and the last four digits of the Debtor's federal tax identification number are: Brevity Ventures Inc. (1327). The location of the Debtor's headquarters and the service address is 3500 West Olive Avenue, Ste. 300, Burbank, CA 91505.

## JURISDICTION

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §
1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before
this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are Bankruptcy Code sections
105(a), 363(b), (f) and (m) and 506(c), Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c),
(e), (f) and (h), 7004, 9007, and 9014, and Local Rule 2002-1 and 6004-1.

## BACKGROUND

3.      On June 12, 2014 (the "Petition Date"), the Debtor filed a voluntary
petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its
business and managing its property as debtor-in-possession pursuant to Bankruptcy Code
sections 1107(a) and 1108.

4.      No request has been make for the appointment of a trustee or examiner,
and no statutory committee has been appointed in this case.

5.      The Debtor has developed and deployed technology and services that
permits the Debtor's customers to send large volumes of video data across the internet
while maintaining highest quality, but without slowing down the speed of transmission.
Notably, and for example, the National Broadcasting Company ("NBC") used Brevity's
services during its broadcast of the 2014 Winter Olympics. NBC used Brevity in NBC's
International Broadcast Center as well as multiple venues throughout Sochi, Russia to
manage terabytes of video graphics. Using Brevity's platform, NBC rendered graphics
on-the-fly while simultaneously transferring and formatting those graphics files for

editing.    This process provided NBC with efficiencies in time and bandwidth that provided NBC with more flexibility to make edits in production material.

6.    At the heart of Brevity's value are two patents owned by the Debtor that permit the Debtor to develop and deploy this transformative technology.

7.    While Brevity's technology has been successful in its application, the Debtor has been unable to turn a profit since its formation.  A liquidity crisis caused by Brevity's inability to raise further capital created the conditions for the Debtor's bankruptcy filing.

8.    Prior to the Petition Date, Brevity conducted efforts to seek additional capital or to sell its assets.  During that period, Brevity was formally presented to more than 150 private or venture capital investors.  In addition, Brevity contacted more than thirty (30) companies regarding a possible sale of assets of the Debtor, plus all of Brevity's existing customers.   Over twenty (20) of these companies conducted due diligence. To ensure a broad search for an investor or buyer, Brevity partnered with multiple third party brokers. These brokers actively engaged Fortune 500 companies, direct competitors, indirect competitors, and other companies within and outside of the media and entertainment the industry who may have had interest. These brokers are experts within the technology and media and entertainment industries and actively raise capital or create deals for many other companies.

9.    During the prepetition period, approximately thirty-five (35) entities or persons executed non-disclosure agreements to obtain access to information about the Debtor in connection with possible investment in or acquisition of the Debtor.  During this period and since the Petition Date, an extensive online data room has been available

for review and has been viewed by over twenty (20) interested parties. Despite these extensive efforts, prior to the filing of this bankruptcy case, the Debtor was unable to come to secure investment, and no buyer entered into an agreement to purchase the Debtor's assets.

10.     On July 7, 2014, the Debtor filed its Motion of the Debtor and Debtor-in-Possession for Entry of an Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtor's Assets, (B) Scheduling Auction and Hearing to Consider Approval of Sale, (C) Approving Form and Manner of Notice of the Sale Hearing, and (D) Granting Related Relief (the "Bidding Procedures Motion") [D.I. 16]. On August 4, 2014, this Court entered that certain   Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtor's Assets, (B) Scheduling Auction and Hearing to Consider Approval of Sale, (C) Approving Form and Manner of Notice of the Sale Hearing, and (D) Granting Related Relief (the "Bidding Procedures Order") [D.I. 50].

11.     In an effort further to ensure that the Debtor vetted the widest possible range of sale opportunities, on August 15, 2014, the Debtor filed its Application for Entry of an Order to Employ and Retain Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco") as Intellectual Property Disposition Agent Nunc Pro Tunc to August 5, 2014 (the "Retention Application") [D.I. 56]. On September 8, 2014, the Court entered its order granting the Retention Application [D.I. 67].

12.     In addition, in order to allow Hilco to market the Debtor's assets, the Debtor exercised its discretion under the Bidding Procedures Order to extend the time for

the submission of Qualified Bids[2] (as defined in the Bidding Procedures Order) through September 19, 2014.

13.      Since the Petition Date and the Debtor's retention of Hilco, Debtor's efforts to market its assets have continued in earnest.  A team consisting of Hilco; Kevin Norris, Chief Executive Officer of Brevity; and the Debtor's legal advisors have continued to contact parties that have in the past expressed interest in acquiring any of the Debtor's assets and dozens of potential new entrants to this process.

14.      Following these comprehensive efforts, two (2) qualified bidders have come forth – Brevity Technology Group, LLC ("BTG") and AllDigital Holdings, Inc. ("AllDigital"). On Tuesday, September 23, 2014, at 11:00 a.m. EDT, the Debtor will conduct a telephonic auction (the "Auction") of the Debtor's assets, with BTG and AllDigital as the bidders.

### RELIEF REQUESTED

15.      By this Motion, the Debtor seeks entry of an order, substantially in the form attached hereto as Exhibit A (the "Sale Order, authorizing and approving (a) the sale of the Property (as defined in the APA) free and clear of all liens, claims, interests and encumbrances and (b) the assumption and assignment of the Assumed Agreements in accordance with the Assumption Procedures (defined herein).

### MATERIAL TERMS OF THE SALE AND LOCAL RULE 6004-1 REQUIREMENTS

16.      The Debtor proposes to convey substantially all its assets (but not including causes of action under chapter 5 of the Bankruptcy Code) to the winner of the

---

[2]      Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Bidding Procedures Order.

Auction. Following the conclusion of the Auction, the Debtor promptly will supplement this Motion with a filing containing the material terms of the sale and the disclosures required under subsections (A) through (O) of Local Rule 6004-1(b)(iv).

## RELIEF REQUESTED

A. The Sale of the Debtor's Assets is in the Debtor's Best Interest and Should Be Approved.

17.     The paramount goal in any proposed sale of estate property is to maximize the proceeds received by the estate. See, e.g., In re Mushroom Transp. Co., Inc., 382 F.3d 325, 339 (3d Cir. 2004) (debtor-in-possession has fiduciary duty to protect and maximize the estate's assets); Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 573 (3d Cir. 2003) (same); Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, a primary objective of the Code [is] to enhance the value of the estate at hand). By this Sale, the Debtor believes that it has maximized the value to be received for the Property, and therefore has maximized the proceeds to be received by the Debtor's estate.

### i.     The Proposed Sale is Appropriate Outside of a Plan of Reorganization and is Authorized by Section 363 as a Sound Exercise of the Debtor's Business Judgment

18.     Bankruptcy Code section 363 provides that a debtor, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b). It is well-established in this jurisdiction that a debtor may sell assets outside of a plan of reorganization pursuant to Bankruptcy Code section 363(b) if there is a sound business reason for doing so. See, e.g., Meyers v. Martin (In re

Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (Bankr. D. Del. 1991); In re Trans World Airlines, Inc., No. 01-00056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

19.    Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. See In re Delaware & Hudson Ry., 124 B.R. at 176; In re Phoenix Steel Corp., 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); In re United Healthcare Sys., Inc., No. 97-1159, 1997 U.S. Dist. LEXIS 5090, at *13–14 and n.2 (D.N.J. Mar. 26, 1997).

20.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders. See, e.g., In re Abbotts Dairies of Penn., Inc., 788 F.2d 143 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983). In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See, e.g., In re Food Barn Stores, Inc., 107 F.3d 558, 564–65 (8th Cir. 1997); In re Integrated Res., 147 B.R. at 659.

21.    Once a debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts generally will not entertain objections to the debtor's conduct. Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616

7

(Bankr. S.D.N.Y. 1986). There is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company. In re Integrated Res., 147 B.R. at 656 (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under Bankruptcy Code section 363(b)(1). Indeed, when applying the business judgment standard, courts show great deference to a debtor's business decisions. See Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.), 1989 WL 106838, at *3 (N.D. Ill. 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

22.     The Debtor's proposed Sale satisfies the "sound business purpose" test. The Sale will preserve and maximize the value of the Property for the benefit of the stakeholders in this chapter 11 case, and reflects a sound exercise of the Debtor's business judgment.

23.     The proposed Sale also satisfies the remaining three (3) factors. The Debtor has provided adequate and reasonable notice of the Sale to interested parties, under the circumstances. The Sale will produce a fair and reasonable price for the Property. Finally, no matter the outcome of the Auction, the Debtor and each of BTG and AllDigital have acted in good faith and at arms' length at all relevant times. Accordingly, the Debtor submits that it has satisfied the requirements of Bankruptcy Code section 363(b) to proceed with the Sale and should be permitted to proceed with the Sale.

      ii.      **The Sale of the Property Free and Clear of Liens is Authorized by Section 363(f)**

24.      The Debtor's assets are unencumbered, and therefore the Debtor believes that it is not required to carry a burden to demonstrate that it may be permitted to sell the Property free and clear under Bankruptcy Code section 363(f).  However, in the event any party comes forward and asserts any claims, liens, or encumbrances against the Property being conveyed to the winning bidder, the Debtor further submit that it is appropriate to sell the Property free and clear of claims, liens, and encumbrances pursuant to Bankruptcy Code section 363(f), with any such claims, liens, and encumbrances attaching to the net sale proceeds of the Property, as and to the extent applicable.  Bankruptcy Code section 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

      a.      applicable nonbankruptcy law permits sale of such property free and clear of such interests;

      b.      such entity consents;

      c.      such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

      d.      such interest is in <u>bona fide</u> dispute; or

      e.      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

25.      Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Property "free and clear" of liens and interests.  See <u>In re Thompson Publishing Holding</u>

Co., Inc., Case No. 10-13070 (Bankr. D. Del. Nov. 19, 2010) [Docket No. 178] ("[t]he [d]ebtors may sell the [p]urchased [a]ssets free and clear of all [l]iens of any kind or nature whatsoever" as long as one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied); In re Dundee Equity Corp., 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. March 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1998) (same); Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (holding that the court may approve the sale free and clear provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

26.    Here, if any party asserts any claim, lien, or encumbrance on the Debtor's Property, the Debtor will demonstrate at the hearing to approve the Sale that one or more of the tests of Bankruptcy Code section 363(f) is satisfied with respect to the Sale. Specifically, under Bankruptcy Code section 363(f)(3), the Debtor may sell the Property free and clear of any party's interests because each "such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property." 11 U.S.C. § 363(f)(3).

27.    Here, after of extensive marketing and advertising, the market conclusively has established the economic value of the Property at the sale price of $200,000. Accordingly, for the purposes of Bankruptcy Code section 363(f)(3), that amount is the "value" of the Property, and the sale of the Property for that amount should be approved. Based upon the foregoing, the Debtor submits that the Sale, free and clear

of claims, liens, and encumbrances on the Property, should be approved by the Court upon the terms requested at the Sale Hearing under Bankruptcy Code section 363(f). <u>See</u> <u>In re Boston Generating, LLC</u>, 440 B.R.. 302, 332–33 (Bankr. S.D.N.Y. 2012); <u>In re</u> <u>Beker</u>, 63 B.R. 474, 475–78 (Bankr. S.D.N.Y. 1985).

28.     Bankruptcy Code section 363(f) is supplemented by Bankruptcy Code section 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a).[3] For this reason as well, the Court should approve the Sale, as it promotes the goal of bankruptcy proceedings to maximize value for the estate.

### iii.     Relief from the Fourteen-Day Waiting Period under Bankruptcy Rules 6004(h) is Appropriate.

29.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property. . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtor respectfully requests that the Sale Order be effective immediately by waiving the fourteen (14) day stay periods under Bankruptcy Rules 6004(h).

30.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. <u>See</u> Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and

---

[3]     Even courts concluding that Bankruptcy Code section 363(f) does not empower them to convey assets free and clear of claims have nevertheless found that Bankruptcy Code section 105(a) provides such authority. <u>See</u> <u>Volvo White Truck Corp. v. Chambersburg Beverage, Inc.</u> (<u>In re</u> <u>White Motor Credit Corp.</u>), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (stating that the absence of specific authority to sell assets free and clear of claims poses no impediment to such a sale, as such authority is implicit in the court's equitable powers when necessary to carry out the provisions of title 11).

eliminate or reduce the fourteen (14) day stay period, a leading treatise suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY ¶ 6004.10 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id.

31.    The Debtor respectfully requests that the Court waive the fourteen (14) day stay period under Bankruptcy Rules 6004(h) or, in the alternative, if an objection to the Motion is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

## RESERVATION OF RIGHTS TO SUPPLEMENT THIS MOTION

32.    The Debtor hereby expressly reserves its right to supplement this Motion with respect to any of the relief sought herein, including the following:

- amending and providing a copy of the APA, as required by Local Rule 6004-1(b)(i);

- amending the proposed form of the Sale Order, as required by Local Rule 6004-1(b)(ii);

- providing any supporting legal and factual justification supporting those provisions that the Debtor is required to highlight pursuant to Local Rule 6004-1;

- providing any supporting legal or factual justification to support a finding that the ultimate buyer is a good faith purchaser and is entitled to the full protection of Bankruptcy Code section 363(m).

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtor such further relief as may be appropriate.

Dated: September 23, 2014

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

/s/ Matthew P. Ward
Matthew P. Ward (DE Bar No. 4471)
Thomas M. Horan (DE Bar No. 4641)
Ericka F. Johnson (DE Bar No. 5024)
222 Delaware Avenue, Suite 1501
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: maward@wcsr.com
E-mail: thoran@wcsr.com
E-mail: erjohnson@wcsr.com

Attorneys for the Debtor and Debtor-in-Possession

WCSR 33003998v2